**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KENNETH ONYECHI,<br><br>Plaintiff,<br><br>v.<br><br>NEW JERSEY OFFICE OF ATTORNEY GENERAL, *et al.*,<br><br>Defendants. | No. 24cv10130 (EP) (MAH)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

*Pro se* Plaintiff Kenneth Onyechi brings this civil rights action under 42 U.S.C. § 1983 against personnel of the Jersey City Police Department, the Hudson County Prosecutor's Office, and the New Jersey Office of the Attorney General. D.E. 17 ("Second Amended Complaint" or "SAC"). The named Defendants are Matthew Platkin, Thomas Eicher, Anthony Picione, Nicholas Villano, Jocelyn Roldan, John Tomei, Matthew Roncaioli, Jane Doe, and several John Doe defendants. After filing the SAC, Plaintiff filed another complaint, D.E. 19, identifying the previously unnamed police supervisor as John Doe 6.[1] The Court addresses that filing below.

[1] On August 14, 2026, before the Court screened the Second Amended Complaint, Plaintiff filed another complaint, D.E. 19. D.E. 19 does not restate the Second Amended Complaint in full. Rather, viewed together with Plaintiff's preceding request to add an unidentified supervisor, D.E. 18, the new filing principally identifies that supervisor as John Doe 6 and adds allegations concerning his role in the August 17, 2022 encounter. Because Plaintiff proceeds *pro se*, the Court construes D.E. 19 as an attempt to add John Doe 6 and those related allegations to the Second Amended Complaint, rather than as an abandonment of the allegations omitted from D.E. 19. The Court therefore screens the Second Amended Complaint and considers the additional allegations in D.E. 19 in determining whether Plaintiff states a claim against John Doe 6 and whether further amendment would be futile.

The Second Amended Complaint is lengthy, but its central theory is straightforward. Law enforcement officials should have detained and prosecuted the man who allegedly assaulted Plaintiff, should have handled the criminal investigation differently, and should have investigated Plaintiff's later complaints about that investigation. While the Court accepts that Plaintiff was upset by the events he describes, Section 1983 provides a remedy only when a state actor violates a federal right. It does not make every delayed response, failed arrest, incomplete investigation, rude interaction, or violation of state procedure a federal constitutional claim.

Because the conduct Plaintiff complains of does not violate any federal right, the Court will **DISMISS** Plaintiff's federal claims ***with prejudice*** and will decline to exercise supplemental jurisdiction over any state law claims.

## I. BACKGROUND[2]

Plaintiff alleges that, on June 24, 2022, a homeless panhandler whom he knew as "James" followed him near Newport Tower in Jersey City, displayed what appeared to be a long blade wrapped in a shirt, and struck him twice, causing bloody cuts to his arms. SAC at 6–8. Plaintiff called 9-1-1. *Id.* at 8. Jersey City police officers responded, photographed his injuries, took him to the East District precinct, and recorded his statement. *Id.* at 8–9. Detective Jermaine Truesdale allegedly told Plaintiff to call the police if he saw James again and said responding officers would

[2] On January 22, 2026, the Court dismissed Plaintiff's prior amended complaint without prejudice because it did not provide a short and understandable statement of his claims. D.E. 16. The Court identified the missing information and gave Plaintiff thirty days to file a second amended complaint. *Id.* Plaintiff filed the SAC on March 2, 2026, D.E. 17, and then submitted a letter explaining the delay and asking whether he should add an unidentified police supervisor as a defendant, D.E. 18 ("Amendment Letter".

In light of Plaintiff's *pro se* status and the circumstances stated in his letter, the Court will excuse the brief delay and screen the Second Amended Complaint on the merits under 28 U.S.C. § 1915(e)(2)(B).

detain and eventually arrest James. *Id.* at 9. Plaintiff calls this statement a police "special relationship." *Id.*

On July 7, 2022, Plaintiff saw James near Newport Town Square Place. *Id.* at 9–10. Plaintiff called 9-1-1 several times and waited about ninety minutes. *Id.* at 10–11. Defendants Matthew Roncaioli and Jane Doe eventually approached him. *Id.* at 11. According to Plaintiff, they questioned and belittled him instead of immediately detaining James. *Id.* at 11–12. A sergeant later tried to locate James, but James had left. *Id.* at 12–13. Plaintiff alleges that Roncaioli and Jane Doe were rude, failed to protect him, failed to intervene, and violated the asserted "special relationship." *Id.* at 11–13.

Plaintiff later dealt with Defendant John Tomei, the detective assigned to investigate the assault. *Id.* at 17. On July 13, 2022, Plaintiff participated in a photo lineup but did not identify James among the photographs shown to him. *Id.* Tomei allegedly told Plaintiff that police possessed video of the assault, were processing it so that it could be viewed, and would keep Plaintiff informed. *Id.* at 18. On August 17, 2022, Plaintiff again saw James and called Tomei and 9-1-1. *Id.* at 14, 18. Defendants John Doe 1 and John Doe 2 eventually responded. *Id.* at 14. Plaintiff alleges that they belittled him, did not detain James, and instead asked James for his last name. *Id.* at 14–15. Plaintiff further alleges that they told James that Plaintiff had filed an aggravated assault report against him. *Id.* at 41. Tomei later allegedly said that a warrant was required, became argumentative, and told Plaintiff that there was insufficient evidence to press charges. *Id.* at 19, 22.

Plaintiff contacted Jersey City Internal Affairs and the Hudson County Prosecutor's Office about the investigation. *Id.* at 22–23, 26–31. He alleges that Assistant Chief Prosecutor Steven Harbace and Prosecutor Colleen Hannon told him that their office had no record of the assault

matter. *Id.* at 22–23. Defendant Jocelyn Roldan of Internal Affairs allegedly told Plaintiff that James would not be prosecuted because Plaintiff had not identified him in the photo lineup and that a prosecutor had approved that decision not to charge James. *Id.* at 23, 28. During a later Internal Affairs interview, Plaintiff saw a photograph of James in a folder that differed from the mugshots shown during the lineup. *Id.* at 24. From that fact, Plaintiff concludes that Tomei added James's photograph to the folder after learning James's last name and thereby fabricated or tampered with evidence. *Id.* at 24–25. Plaintiff also alleges that Roldan would not let him view the lineup video and did not adequately investigate Tomei. *Id.* at 28–31.

Plaintiff then sought additional help from the Hudson County Prosecutor's Office. *Id.* at 26–35. He alleges that John Doe 3, John Doe 4, and John Doe 5 were dismissive, would not let him speak directly with a prosecutor, declined to investigate Tomei, and denied access to the lineup video or other records. *Id.* Plaintiff later contacted the New Jersey Office of the Attorney General. *Id.* at 36. Anthony Picione forwarded Plaintiff's email to Nicholas Villano. *Id.* Villano spoke with Plaintiff but rejected his allegations of a coverup. *Id.* at 36–37. Picione did not answer a follow-up email, and Thomas Eicher and Matthew Platkin did not respond to Plaintiff's later emails. *Id.* at 38.

The Second Amended Complaint uses many legal labels, including "special relationship," state-created danger, deliberate indifference, failure to intervene, evidence fabrication, obstruction of justice, concealment, criminal omission, dereliction of duty, police malfeasance, and violations of the New Jersey Crime Victims' Bill of Rights. *See generally id.* at 9–39. Plaintiff seeks nominal and punitive damages from most Defendants. *Id.* at 41. He also seeks emotional distress damages from John Doe 1, John Doe 2, and Tomei, alleging that their failure to detain James caused anxiety that led him to go to a hospital. *Id.* at 43.

## II. LEGAL STANDARD

After granting leave to proceed *in forma pauperis*, a court must dismiss a complaint that is frivolous or malicious, fails to state a claim, or seeks money damages from a defendant who is immune. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). A complaint is legally frivolous when it rests on an indisputably meritless legal theory. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

The standard for failure to state a claim under Section 1915(e)(2)(B)(ii) is the same standard used under Federal Rule of Civil Procedure 12(b)(6). *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). A complaint must contain enough factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts well-pleaded facts, but it does not accept legal labels, unsupported conclusions, or speculation as facts. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).

Federal Rule of Civil Procedure 8 also requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may be dismissed when it is so confused, vague, or unintelligible that its substance is hidden. *Muhammad v. U.S. Bd. of Governors Postal Sys.*, 574 F. App'x 74, 74 (3d Cir. 2014).

Because Plaintiff is proceeding *pro se*, the Court reads the Second Amended Complaint liberally and applies the relevant legal principles even if Plaintiff did not use the correct name for a claim. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). Liberal construction, however, does not allow the Court to invent facts or a federal right that the operative pleading does not plausibly allege. *See Vogt*, 8 F.4th at 185; *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

The Court has carefully reviewed the Second Amended Complaint and D.E. 19 and treats their factual allegations as true for screening purposes. The Court also recognizes that Plaintiff alleges he was the victim of a serious assault and later felt dismissed by public officials. Nothing in this decision minimizes those concerns. The question for the Court, however, is narrower: do the facts alleged show that any named Defendant violated a federal right for which Section 1983 permits damages?

To bring a claim under Section 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Each Defendant also must have personally participated in the alleged violation or had actual knowledge of and acquiesced in it. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Conclusory assertions of personal involvement are not enough. *See Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005).

Because Section 1983 does not impose *respondeat superior* liability, a supervisor is not liable merely because a subordinate allegedly violated the Constitution. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). A supervisor may instead be liable in one of two ways. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). *First*, a policymaker may be liable if, "with deliberate indifference to the consequences, [the policymaker] established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (cleaned up). *Second*, a supervisor may be personally liable if the supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [the] subordinates' violations." *Id.*

As shown below, Plaintiff has not alleged an underlying federal violation by any Defendant. The Court therefore will **DISMISS** the federal claims in the Second Amended Complaint.

**A. The Alleged Failure to Protect Plaintiff or Detain James Did Not Violate Due Process**

The Fourteenth Amendment generally does not require the government to protect a person from private violence. *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 280–81 (3d Cir. 2006). The Due Process Clause protects people from misuse of state power; it does not make the State a guarantor of safety from other private persons. *Id.* at 281. This rule applies even when officials know about a danger or express an intent to help. *Id.* at 284. A delay in seeking a suspect's detention, a failure to act, or an unfulfilled expression of intent to help does not constitute the affirmative use of state authority required for a state-created danger claim. *Id.* Nor does a state official's merely negligent conduct implicate the Due Process Clause. *Daniels v. Williams*, 474 U.S. 327, 328–29 (1986).

Plaintiff's asserted "special relationship" does not change that rule. In the constitutional sense, a special relationship arises only when the State has taken a person into custody and limited his ability to act on his own behalf, such as through imprisonment or involuntary commitment. *Bright*, 443 F.3d at 280–81. Plaintiff does not allege that any Defendant took him into custody, prevented him from leaving the area, or otherwise restricted his ability to avoid James or seek help. *See generally* SAC at 6–22. Detective Truesdale's instruction to call the police if Plaintiff saw James was an assurance of future help, not a custodial relationship. *Id.* at 9. Under *Bright*, an official's statement that the government intends to help does not itself create a constitutional duty to do so. *Bright*, 443 F.3d at 284.

For the same reason, Roncaioli, Jane Doe, John Doe 1, John Doe 2, and Tomei did not violate the Due Process Clause merely because they allegedly responded slowly, spoke disrespectfully, did not detain James, gave Plaintiff information he believed was wrong, or failed to complete the investigation in the way Plaintiff expected. SAC at 9–22. Those allegations describe omissions or dissatisfaction with police work, not an affirmative deprivation of a federal right. *See Bright*, 443 F.3d at 282–84; *Sanders v. Downs*, 420 F. App'x 175, 180 (3d Cir. 2011).

### B. The Second Amended Complaint Does Not State a State-Created Danger Claim

Although the Fourteenth Amendment generally does not impose an affirmative duty on the State to protect a person from violence by a private actor, a narrow exception—the state-created danger doctrine—may apply when a state actor affirmatively uses government authority to create a danger or makes the person more vulnerable to danger than the person would have been had the State not acted. *Bright*, 443 F.3d at 281–82. A state-created danger claim requires facts showing: (1) a foreseeable and fairly direct harm; (2) conduct that is sufficiently culpable to shock the conscience; (3) that the plaintiff was a foreseeable victim or member of a discrete group; and (4) an affirmative use of state authority that created or increased the danger. *Id.* The fourth requirement is important: the doctrine addresses misuse of state authority, not a failure to use authority. *Id.* at 282.

Most of the conduct alleged in the Second Amended Complaint consists of omissions: officers allegedly did not arrive sooner, detain or arrest James, or continue the investigation as Plaintiff wished. SAC at 9–22, 26–39. Under *Bright*, a failure to arrest or otherwise act is not the affirmative use of authority required for this claim. *Bright*, 443 F.3d at 282–84.

One allegation describes an affirmative act: Plaintiff says John Doe 1 and John Doe 2 told James that Plaintiff had filed an aggravated assault report while they asked for James's last name.

SAC at 41. Even accepting that allegation as true, the Second Amended Complaint does not describe any later threat, contact, pursuit, or assault by James. *See generally id.* at 14–43. Nor does Plaintiff connect his later anxiety treatment to that disclosure; he alleges that the anxiety resulted from the officers' failure to detain James. *Id.* at 43. Because the Second Amended Complaint does not allege a foreseeable and fairly direct harm caused by the disclosure, the state-created danger claim fails. *Bright*, 443 F.3d at 281–82. The Court therefore need not address the remaining elements.

### C. Plaintiff Has No Federal Right to Compel an Investigation, Arrest, Prosecution, or a Particular Response to His Complaints

A private citizen does not have a judicially enforceable interest in the prosecution or nonprosecution of another person. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). The Third Circuit has likewise held that there is no federal constitutional right to the investigation or prosecution of another person. *Sanders v. Downs*, 420 F. App'x 175, 180 (3d Cir. 2011). It follows that Plaintiff cannot obtain damages under Section 1983 because officers did not arrest James, because prosecutors did not charge him, or because police and prosecutors reached conclusions with which Plaintiff disagreed. *See Sanders*, 420 F. App'x at 180. Decisions about whether and how to investigate, arrest, and prosecute are entrusted to public officials; they are not federal rights belonging to a complaining witness. *Id.*

This rule is also fatal to the claims against Roldan, John Does 3 through 5, Villano, Picione, Eicher, and Platkin. *See Sanders*, 420 F. App'x at 180. The Second Amended Complaint alleges that those Defendants refused to investigate Plaintiff's accusations against other officials, give him the response he wanted, arrange a meeting with a prosecutor, or overturn earlier decisions. SAC at 22–39. Because Plaintiff had no federal right to that investigation or result, the allegedly

dismissive, rude, or unhelpful manner in which those officials responded does not support Section 1983 damages. *See Sanders*, 420 F. App'x at 180.

Plaintiff also had no general federal constitutional right to obtain the lineup video, an investigative file, or other records held by law enforcement. *Cap. Cities Media, Inc. v. Chester*, 797 F.2d 1164, 1174–75 (3d Cir. 1986). The First Amendment does not create a presumptive right of access to any government information that interests a requester. *Id.* Plaintiff may believe that state public records or victims' rights law entitled him to particular materials. SAC at 28–35. But the Second Amended Complaint does not identify a federal right to those records, and Section 1983 does not enforce state disclosure rules by themselves. *See West*, 487 U.S. at 48.

### D. The Allegations of Evidence Fabrication, Concealment, Obstruction, and Retaliation Do Not State a Federal Claim

The Constitution forbids police from fabricating evidence against a criminal defendant and using it to initiate a prosecution or obtain a conviction. *Halsey v. Pfeiffer*, 750 F.3d 273, 292–95 (3d Cir. 2014). Plaintiff, however, was the complaining witness, not a criminal defendant. SAC at 6–9, 22–25. He does not allege that any photograph or statement was used to charge, arrest, detain, try, or convict him. *See generally id.* at 6–43. The alleged contents of an internal police folder therefore did not cause the kind of liberty deprivation addressed in *Halsey*. *See Halsey*, 750 F.3d at 292–95.

Plaintiff's fabrication allegation is also speculative. The Second Amended Complaint says that Plaintiff saw a photograph of James in an Internal Affairs folder that differed from the mugshots shown during the earlier lineup. SAC at 24–25. That fact does not plausibly show who placed the photograph in the folder, when it was placed there, whether it was part of the original lineup, or whether anyone falsified evidence. *See Iqbal*, 556 U.S. at 678. Plaintiff's further conclusion that Tomei added the photograph to retaliate against him rests on inference and

speculation, not alleged facts. SAC at 25; *see Iqbal*, 556 U.S. at 678. Labels such as "coverup," "perjury," "obstruction," and "concealment" cannot replace those missing facts. *Twombly*, 550 U.S. at 555–57.

Even if the Court treats Plaintiff's use of the word "retaliatory" as an attempt to plead a First Amendment claim, the result is the same. SAC at 25, 42. Such a claim requires protected conduct, an adverse action that would deter a person of ordinary firmness, and a causal connection between the two. *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017). Plaintiff's complaints to government officials may be protected petitioning. *Id.* But the Second Amended Complaint does not plausibly allege a concrete retaliatory act by Tomei or facts showing that any action occurred because Plaintiff criticized him. *See* SAC at 24–25, 42; *Mirabella*, 853 F.3d at 649. The speculative photo folder theory cannot supply those missing elements. *See Iqbal*, 556 U.S. at 678.

Nor may Plaintiff use this civil action to require officials to investigate or prosecute alleged crimes such as obstruction, perjury, concealment, or official misconduct. *See Linda R.S.*, 410 U.S. at 619; *Sanders*, 420 F. App'x at 180. Section 1983 provides a remedy only for the deprivation of a federal right. *West*, 487 U.S. at 48.

### E. The Failure-to-Intervene and Supervisory Theories Also Fail

A failure-to-intervene claim generally concerns an officer who has a realistic opportunity to stop another officer's ongoing constitutional violation, such as excessive force, but refuses to do so. *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002). The doctrine does not create a freestanding duty to arrest a private person. *See Bright*, 443 F.3d at 282–84; *Sanders*, 420 F. App'x at 180. Because the Second Amended Complaint does not plausibly allege an underlying constitutional violation by any officer, no other Defendant can be liable for failing to intervene in that conduct. *See Smith*, 293 F.3d at 650–51.

Section 1983 also requires each individual Defendant's personal involvement in the alleged federal wrong. *Chavarriaga*, 806 F.3d at 222, 227. Personal involvement may be shown by participation, direction, or actual knowledge and acquiescence, but it cannot rest only on a person's supervisory title. *Id.* The Second Amended Complaint alleges that Picione, Eicher, and Platkin received or failed to answer emails after the underlying events. SAC at 38. Receiving or failing to answer those emails is not personal participation in an earlier constitutional violation. *See Chavarriaga*, 806 F.3d at 222, 227. Villano allegedly rejected Plaintiff's accusations after a telephone call. SAC at 36–37. That response likewise does not create liability because Plaintiff had no federal right to the investigation or result he requested. *See Sanders*, 420 F. App'x at 180.

Plaintiff also submitted a letter seeking to add an unidentified supervisor as a Defendant. Amendment Letter at 1. The Amendment Letter states that John Doe 1 reportedly spoke with a supervisor and that discovery might reveal a failure to train. *Id.* After filing that letter, Plaintiff filed D.E. 19, which identifies the proposed supervisor as John Doe 6 and alleges that John Does 1 and 2 called him for instructions before approaching James to obtain his last name rather than detaining him. D.E. 19-4 at 2. Plaintiff labels this theory "Failure to Properly Supervise." *Id.* D.E. 19 also attributes emotional, mental, and legal injuries "possibly" to John Doe 6 but does not identify a distinct injury caused by him. D.E. 19-3 at 1. Even assuming John Doe 6 directed or approved the officers' response, these allegations do not state a supervisory liability claim. As explained above, the officers' failure to detain or arrest James did not violate Plaintiff's federal rights. A supervisor cannot be liable under Section 1983 for directing or approving conduct that did not violate those rights. *See A.M.*, 372 F.3d at 586. D.E. 19 likewise does not identify a deficient training practice, prior pattern of similar violations, or other policy or custom that caused

a constitutional injury. *See id.* The additional allegations therefore do not cure the supervisory claim. To the extent Plaintiff requires leave to add John Doe 6, leave will be **DENIED** as futile.

### F. The Court Will Not Decide Any Independent State Law Claims

Plaintiff repeatedly invokes the New Jersey Crime Victims' Bill of Rights and New Jersey criminal statutes concerning official misconduct, obstruction, and evidence. SAC at 9–39. A violation of state law alone is not a violation of Section 1983; Plaintiff must identify a federal right. *West*, 487 U.S. at 48. Because all federal claims will be dismissed, the Court will decline supplemental jurisdiction over any independent state law claims under 28 U.S.C. § 1367(c)(3). *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000). Those claims, if any, will be **DISMISSED** ***without prejudice*** to whatever remedies may be available in state court.

### G. Further Amendment Would Be Futile

A *pro se* litigant ordinarily should receive an opportunity to amend unless amendment would be inequitable or futile. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108, 114 (3d Cir. 2002). Plaintiff has already had two opportunities to amend, and amended a third time on his own volition. *See* D.E. 12; D.E. 16; SAC; D.E. 19. The Court's prior Order identified the pleading deficiencies in detail and warned that failure to cure them could result in dismissal with prejudice. D.E. 16 at 5–6. The Second Amended Complaint and D.E. 19 now collectively give substantially more factual detail, so the Court can understand Plaintiff's position. SAC at 6–43. Nevertheless, the remaining defects are legal, not merely organizational: the Constitution does not give Plaintiff a right to have James arrested or prosecuted, a right to a particular police investigation, or a general right to investigative records; and the alleged photo folder conduct was not used against Plaintiff in a criminal proceeding. *See Bright*, 443 F.3d at 282–84; *Sanders*, 420 F. App'x at 180; *Capital Cities Media*, 797 F.2d at 1175; *Halsey*, 750 F.3d at 292–95. Plaintiff also has identified the injuries

that he attributes to Defendants, and he ties those injuries to the failure to detain James, not to the alleged disclosure to James. SAC at 40–43. Additional factual detail about the same events cannot turn those theories into federal claims. D.E. 19 confirms that conclusion. It identifies the proposed supervisor as John Doe 6 and alleges that John Does 1 and 2 contacted him for instructions, but it still ties the supervisory theory to the officers' decision not to detain James. D.E. 19-4 at 2. Because that decision did not violate Plaintiff's federal rights, the additional allegations do not cure the legal defect. Further amendment would therefore be futile.

Accordingly, the federal claims will be **DISMISSED *with prejudice***. For the avoidance of doubt, the dismissal does not determine whether Defendants followed every state rule, department policy, or best practice. It means only that the facts alleged do not state a claim for damages under federal law.

## IV. CONCLUSION AND ORDER

Accordingly,

**IT IS** on this 25th day of August, 2026,

**ORDERED** that Plaintiff's request in D.E. 18 to excuse the late filing is **GRANTED**, and the Second Amended Complaint, D.E. 17, is deemed timely; and it is further

**ORDERED** that, to the extent D.E. 18 seeks leave to add the supervisor now identified in D.E. 19 as John Doe 6, or D.E. 19 itself requires leave of Court, leave is **DENIED** as futile; and it is further

**ORDERED** that all federal claims in the Second Amended Complaint, D.E. 17, and, to the extent D.E. 19 is properly treated as an amended pleading, all federal claims in D.E. 19 are **DISMISSED *with prejudice*** under 28 U.S.C. § 1915(e)(2)(B)(ii); and it is further

**ORDERED** that any state law claims in the Second Amended Complaint, D.E. 17, and, to the extent D.E. 19 is properly treated as an amended pleading, any state law claims in D.E. 19 are **DISMISSED** ***without prejudice*** under 28 U.S.C. § 1367(c)(3); and it is further

**ORDERED** that this matter shall remain **CLOSED**; and it is finally

**ORDERED** that the Clerk of Court shall mail a copy of this Memorandum Order to Plaintiff by regular mail.

Evelyn Padin, U.S.D.J.